IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| PATRICK J.W.,<br>        Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>        Defendant. | Case No. 4:22-cv-04047-JEH |

**Order**

Now before the Court is the Plaintiff Patrick J.W.'s Motion for Summary Judgment (Doc. 14), the Commissioner's Motion for Summary Affirmance (Doc. 17), and the Plaintiff's Response (Doc. 19).[1] For the reasons stated herein, the Court DENIES the Plaintiff's Motion for Summary Judgment and GRANTS the Commissioner's Motion for Summary Affirmance.[2]

**I**

Patrick J.W. filed an application for supplemental security income (SSI) on October 2, 2019, alleging disability beginning on May 14, 1994. His SSI claim was denied initially on March 4, 2020 and upon reconsideration on March 3, 2021. Patrick filed a request for hearing concerning his application which was held on July 8, 2021 before the Honorable John M. Wood (ALJ). At the hearing, Patrick was represented by an attorney, and Patrick and a vocational expert (VE) testified. Following the hearing, Patrick's claim was denied on July 22, 2021. His request

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 10, 11).
[2] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 7) on the docket.

1

for review by the Appeals Council was denied on January 6, 2022, making the ALJ's Decision the final decision of the Commissioner. Patrick timely filed the instant civil action seeking review of the ALJ's Decision on March 12, 2022.

## II

Patrick argues the ALJ committed the following errors: 1) the ALJ's conclusion Patrick could perform work which required him to sit for four hours and stand for four hours of an eight-hour work day without ever needing to lie down flat was reliant on his "patently wrong" dismissal of Patrick's credibility with regard to his need to lie down frequently due to hip/lower back pain and was, resultantly, unsupported by substantial evidence or the relevant legal standards; and 2) the ALJ committed reversible error requiring an order for a finding of disability and/or remand to the agency in concluding the ability to perform a total of 35,600 jobs in the entire United States constituted the ability to perform a "significant" number of jobs in the national economy at Step Five of the Decision.

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind

might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 416.966. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) is performing substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

> 5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Patrick claims error on the ALJ's part at Steps Four and Five.

### A

At Step One, the ALJ determined Patrick had not engaged in substantial gainful activity since October 2, 2019, the application date. AR 15. At Step Two, the ALJ determined Patrick had the following severe impairments: dysfunction of joints (Perthes disease[3]); personality disorder; and anxiety. *Id.* At Step Three, the ALJ determined Patrick did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id.* At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR 416.967(a) except he can never climb ladders, ropes or scaffolds, and can perform other postural activities occasionally. He must avoid environmental hazards such as unprotected heights and dangerous machinery. He can perform no pushing/pulling with

---

[3] "Chronic inflammation of the head of the femur in children, resulting in atrophy and shortening of the neck of the femur with a wide flat head." Taber's Online, https://www.tabers.com/tabersonline/view/Tabers-Dictionary/756864/all/osteochondritis#1 (last visited May 18, 2023); *see also* OrthoInfo, https://orthoinfo.aaos.org/en/diseases--conditions/perthes-disease (last visited May 18, 2023) ("Perthes disease is a rare childhood condition that affects the hip. It occurs when the blood supply to the rounded head of the femur (thighbone) is temporarily disrupted. Without an adequate blood supply, the bone cells die, a process called avascular necrosis").

4

>lower extremities. The claimant must avoid concentrated exposure to extreme temperatures, humidity, and vibrations. The claimant needs to have the option to alternate periodically equally between sitting and standing at no more than 30 minute intervals while resuming being on task within 2 minutes of each positional change. His [sic] is limited to no interaction with the public, and occasional interaction with coworkers and supervisors.

AR 17. The ALJ found Patrick had no past relevant work. AR 23. At Step Five, the ALJ determined that, considering Patrick's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Patrick could perform. AR 24. The ALJ concluded that Patrick had not been under a disability since October 2, 2019, the date his application was filed. AR 25.

B

Patrick first argues that the ALJ, in implicitly evaluating Patrick's credibility as it related to his need to lie down at some point throughout an eight-hour work day secondary to alleged debilitating pain, failed to consider factors and objective evidence which clearly weighed in Patrick's favor and gave reasons which the Seventh Circuit has deemed "patently wrong." Patrick contends the ALJ jumped to unsupported conclusions. The Commissioner argues that the ALJ reasonably tailored Patrick's work restrictions to the evidence and provided several valid reasons for not fully crediting his subjective allegations. Patrick alleged disability due to Legg-Perthes disease (Perthes disease) with constant hip pain, reported he had a lot of pain and walked with a limp, and reported his hip popped out of the right joint. In January 2020, he stated that he had not seen a medical doctor since he was diagnosed with bilateral Perthes disease in the 1980s.

At the hearing, Patrick's attorney asked him to imagine a job that allowed Patrick to sit or stand as needed at the workstation and further asked him if he

could, with that allowance, work 40 hours a week. AR 43. Patrick responded there was "no way," he experienced "too much pain," and the pain never went away. *Id*. Patrick's attorney next asked him what he did to reduce his pain, and Patrick testified, "The best thing I can do is lay flat on my back. That's the least amount of pain I have. I still have pain, but that's the least amount of pain I'm going to have." AR 44. He further testified that he spent "most" of his day laying on his back. *Id*. Patrick's attorney later elicited from the VE that if a person needed to lay down flat at any point during the working day, not during a break, that would be work preclusive. AR 56.

SSR 16-3p provides that all the evidence, including objective medical evidence, is to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms and also the factors set forth in 20 C.F.R. § 416.929(c)(3) are to be considered including: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-medication treatments; any other measures used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms. SSR 16-3p, at *7-8. Patrick identifies three particular instances in the Decision he believes illustrate the ALJ erred in failing to credit his testimony that he needed to lie down at some point throughout an eight-hour work day.

Patrick argues the ALJ wrongfully concluded he failed to demonstrate significantly reduced range of motion – a clinical finding SSA regulations explicitly mention as supporting an allegation of intense and debilitating pain. *See* SSR 16-3p, at *5 ("The intensity, persistence, and limiting effects of many symptoms can be clinically observed and recorded in the medical evidence. Examples such as reduced joint motion . . . sensory deficit, and motor disruption

illustrate findings that may result from, or be associated with, the symptom of pain"). In his Decision, the ALJ considered that Patrick's range of motion of the cervical and lumbar spine was not limited, but there was tenderness in his right hip and active range of motion of both hips was limited at his internal medicine consultative exam in January 2020. Patrick's range of motion was normal, though his gait was altered in May 2020. He had tenderness over the right greater trochanter[4] and reduced range of motion in September 2020. The ALJ also recited treatment notes from October 2020 at which time exam revealed Patrick's right hip was "severely limited in range of motion, but his left hip was normal" and from November 2020 at which time Patrick again objectively had "severely limited range of motion of the right hip, though his left hip was normal." AR 20.

While the ALJ did conclude "the medical record does not demonstrate clearly that [Patrick] has significantly limited range of motion," that statement was just part of a paragraph which continued that the medical record also did not demonstrate "muscle atrophy, motor weakness, difficulty ambulating, or reflex abnormalities that are associated with intense and disabling pain." AR 21. Continuing, the ALJ reasoned:

> The record shows limited right hip range of motion and antalgic gait, however, the other deficits noted were minimal. Strength was consistently 5/5, and he showed no deficits in reflexes or sensation. The claimant does not use (nor has a provider recommended) an assistive device.

*Id*. The ALJ's stated rationale, considered *as a whole*, as to the objective medical evidence shows that he did not dismiss evidence of Patrick's "severely limited range of motion of the right hip" out of hand. The ALJ explained his reasons for

---

[4] "A thick process at the superior end of the femur on the lateral aspect, projecting upward to the union of the neck and shaft." Taber's Online, https://www.tabers.com/tabersonline/view/Tabers-Dictionary/744015/all/trochanter#3 (last visited May 24, 2023).

7

why he found Patrick's impairments could be anticipated to produce a certain amount of pain and limitation, but not the amount of pain and limitation Patrick alleged.  The ALJ further provided support for those reasons.  *Compare Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014) (explaining "patently wrong" means "the decision lacks any explanation or support").  As the Commissioner points out, the ALJ cited several treatment notes which revealed normal findings aside from the right hip and results of Patrick's consultative examination which revealed the ability to get on and off the exam table without difficulty; walk greater than 50 feet without support; heel, toe, and tandem walk; and squat without difficulty and which included a negative straight leg raise test.  The ALJ also discussed that records indicated Patrick was in no apparent or acute distress.  It is clear to the Court that Patrick's "minimal" other noted deficits, normal exam findings, and *absent* additional indications of intense and disabling pain informed the ALJ's ultimate conclusion that the medical record did not indicate Patrick would be unable to perform at the sedentary exertional level with the additional limitations he included in the RFC finding.  In other words, the ALJ did not jump to an unsupported conclusion with regard to the objective medical evidence.

Next, Patrick argues that the ALJ did not sufficiently inquire into Patrick's reasons for not seeking treatment beyond the treatment the ALJ described as "rather conservative."  AR 21.  Thus, Patrick says the ALJ's implication he was not pursuing additional medical treatment was a patently wrong reason to dismiss his credibility.  The Commissioner counters with a recitation of record evidence the ALJ considered in his Decision before reaching his conclusion that Patrick's treatment was "conservative."  The Commissioner argues the ALJ appropriately characterized Patrick's treatment as conservative, acknowledged evidence of Patrick's reasons for not seeking additional treatment, and considered the effectiveness of Patrick's treatment.

SSR 16-3p provides in relevant part that "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p, at *9. The ALJ thus reasonably considered the treatment evidence as a whole and observed that the extent and nature of it did not support Patrick's allegations of the level of pain he experienced due to Perthes disease. The extent and nature of Patrick's treatment was directly addressed in the Decision where the ALJ discussed that: Patrick had not seen a medical doctor since he was diagnosed with Perthes disease in the 1980s; he was taking no pain medications and had not been to an orthopedic surgeon or pain clinic when he established care with a family nurse practitioner in May 2020; he was prescribed Meloxicam; and he agreed to a right hip steroid injection in September 2020. The ALJ further detailed that Patrick stated the Meloxicam helped his symptoms, but he had not taken it for two weeks because he wanted to know Dr. Raheemuddin M. Nazeer's, a rheumatologist, thoughts at his appointment in October 2020. In November 2020, Dr. Nazeer told him to try extended release Tylenol. Patrick also indicated in November 2020 that Meloxicam did help, but he would start having pain again in the evening. Patrick opted to follow up with his primary care provider rather than see Dr. Nazeer in six months after his November 2020 appointment. Later, the ALJ summarized in support of his finding of "conservative" treatment that Patrick opted to continue with his primary care provider rather than a rheumatologist, he had not seen a pain specialist, he did not utilize "any of the strong narcotic pain medication often prescribed for intense and disabling pain," and he had not been referred for physical therapy. AR 21. The ALJ's conservative treatment finding thus logically followed from the breadth of evidence he discussed. *See Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) (stating that an ALJ

is required to provide an accurate and logical bridge between the evidence and his conclusions).

Moreover, there was no shortcoming in the ALJ's consideration of the reasons Patrick did not seek or receive additional treatment. *See* SSR 16-3p, at *9 ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints"). The ALJ explicitly acknowledged "the claimant's assertion that a lack of insurance has prevented him from seeking care." AR 21. It was for the ALJ, not the Court, to weigh whether that reason was sufficient to overcome the treatment that did occur. *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (explaining that in reviewing an ALJ's decision, the court cannot reweigh evidence, resolve conflicts in the record, decide questions of credibility, or otherwise substitute its own judgment for that of the Commissioner). Patrick does not point to anywhere in the medical record where he was offered a particular treatment but could not pursue it due to lack of insurance. While Patrick states otherwise, the ALJ also explicitly considered that Dr. Shawn Wynn, an orthopedist and Patrick's would-be surgeon, informed Patrick the definitive treatment would be total hip arthroplasty though Patrick would likely continue to have back symptoms. AR 19. Again, it was for the ALJ to weigh whether the likelihood of continuing back symptoms were reason enough to overcome Patrick's allegations of the degree of pain he experienced during the period under consideration. As for Patrick's assertion that the ALJ erred by not even asking Patrick why he did not seek the use of narcotic pain medication, Patrick did not provide any reasons for the ALJ to consider. *See Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021) ("Social Security Rule 16-3p did not require the ALJ to ask [the claimant] about her failure to seek treatment"). Given that it was Patrick's burden to supply evidence

in support of his claim of disability, the reasons Patrick now presents on appeal were more aptly for the ALJ to be presented with in the first instance. *See Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability").

Lastly, Patrick argues the ALJ's assessment of his subjective allegations of pain due to Perthes disease was patently wrong, "perhaps most significantly," because the ALJ failed to specifically mention his statement that he had to lie flat on his back in order to get any sort of pain relief and that he spent most of his days in that very position. Plf's MSJ (Doc. 15 at pg. 16). Per Patrick, the ALJ's failure to expressly consider his statement, an activity SSR 16-3p explicitly names as something which (again, per Patrick) weighs toward a finding that Patrick's subjective allegations were entirely consistent with the record evidence, requires reversal and remand.

Indeed, the ALJ did not include in his recitation of Patrick's statements the single statement Patrick made at the hearing that the "best thing I can do is lay flat on my back." AR 44. And, indeed, SSR 16-3p tasks an ALJ with considering "[a]ny measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g. lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board)[.]" SSR 16-3p, at *8. Of course, SSR 16-3p does *not* state that if a claimant says he lays flat on his back to relieve pain, then an ALJ must necessarily find a claimant's pain does in fact render him disabled. Measures a claimant uses is just one factor among many an ALJ is tasked with considering to ensure a proper subjective symptom assessment. Moreover, an ALJ need not mention every piece of evidence. *Roddy*, 705 F.3d at 638; *see also Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012) (explaining the ALJ's decision was not perfect but also noting that "an ALJ's credibility findings need not specify which statements

11

were not credible"). As the Seventh Circuit put it in *Simila v. Astrue*, so too here: "Though the ALJ's credibility determination was not flawless, it was far from 'patently wrong.'" 573 F.3d 503, 517 (7th Cir. 2009). Here, in conformity with 20 C.F.R. § 416.929, the ALJ juxtaposed Patrick's statements regarding his symptoms, including that his pain was relieved with constant adjustment, with the objective medical evidence and Patrick's course of treatment. The ALJ adequately traced the path of his reasoning in those two regards (objective medical evidence and treatment as analyzed *supra*), and stated succinctly, "Notably, the [RFC] herein provides for the claimant's need to change positions, which is consistent with his testimony and reports to treatment providers." AR 23.[5]

## C

Patrick last argues that the ALJ's finding at Step Five that Patrick could perform a "significant" number of jobs should be rejected as not consistent with the conclusions of neighboring courts within this circuit, agency regulations, or any plain meaning of the term "significant." He also contends that while the questions that necessarily remain could be hashed out with additional vocational testimony if the Court were to remand this case, his ability to perform .02% of jobs in the national economy does not constitute an ability to perform a "significant" number of jobs which the Court maintains the discretion and authority to conclude as much, and so the Court should order the Social Security Administration to award him disability benefits. The Commissioner refers back to Patrick's own concession that issues remain which could be sorted out with additional VE testimony upon remand such that the extraordinary remedy of awarding benefits is "plainly unwarranted" here. Dft's MSA (Doc. 17-1 at pg. 16). The Commissioner

---

[5] As the Commissioner cites, Patrick stated in his December 2019 Function Report – Adult that, "I have pain while sitting [sic] sometimes I can adjust the way I'm sitting [sic] sometimes I need to stand. There is always discomfort though." AR 235. During the hearing, Patrick testified that to relieve the pain from sitting after 20 minutes to an hour, "Usually, I stand up. Like I'll stand up and maybe walk around a little bit, but then the problem is that once I sit back down, it happens quicker the next time." AR 43.

otherwise relies upon Seventh Circuit case law which, she says, demonstrates that 35,600 national jobs clears the significance threshold, whereas Patrick cites a string of unpublished, non-precedential district court decisions, all of which are outdated and factually distinguishable. In reply, Patrick insists that, as it was the ALJ's burden at Step Five, the development as to regional numbers was the responsibility of the ALJ, and the Commissioner's cited cases are the "fruits of a poisonous tree." Plf's Resp. (Doc. 19 at pg. 9).

At the hearing, the VE testified that an individual with Patrick's RFC could perform the following jobs: document specialist; tube operator; sorter; and polisher. The VE reduced the numbers for each job, in light of the sit/stand option, as follows: 20,000 document specialist jobs nationally; 4,600 tube operator jobs nationally; 1,500 sorter jobs nationally; and 1,500 polisher jobs nationally. The VE testified further that there were an additional 8,000 jobs nationally that would be consistent with the hypothetical requiring a sit/stand option. In his Decision, the ALJ determined that jobs existed "in significant numbers in the national economy that claimant can perform." AR 24.

20 C.F.R. § 416.966 provides, in relevant part, "We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country." 20 C.F.R. § 416.966(a). Section 416.966 continues, "Isolated jobs that exist in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy. We will not deny you disability benefits on the basis of the existence of these kinds of jobs." 20 C.F.R. § 416.966(b). Using a federal district court in Indiana's formula set forth in a 2020 case, Patrick says that if only 35,600 jobs that he could perform exist in all of the United States, then there are about 1,359 jobs in the entire state of Illinois which an individual with his RFC could perform.

13

Though Patrick has made a worthy argument, the Court finds it cannot go so far as to accept his argument in order to direct an award of benefits or even to remand for the VE to expound upon regional numbers for the identified jobs. First, just seven months ago, the Seventh Circuit in *Milhem v. Kijakazi* stated very clearly, "It is within the ALJ's discretion to determine whether jobs exist only in very limited numbers . . . This determination does not depend upon the establishment of a standard for significance." 52 F.4th 688, 695 (7th Cir. 2022). Reiterating the meaning of "substantial evidence," the *Milhem* court reasoned:

> The vocational expert provided the ALJ with plenty of evidence that Milhem could perform 89,000 jobs. The ALJ grounded her conclusion that the number of jobs mentioned was "significant" on her consideration of Milhem's "age, education, work experience, and residual functional capacity" and that Milhem was "capable of making a successful adjustment to other work that exists" in the economy. The ALJ's hypotheticals to the vocational expert revealed that she weighed the testimony presented and determined that Milhem could at least perform sedentary work. The ALJ further assessed the tolerance for absences in these positions, the requirements for being on task in the workplace, and the frequency of breaks during the workday, all reflecting the ALJ's conclusions about Milhem's capacity to perform work.

*Id*. at 696. The *Milhem* court concluded that on the record before it, a reasonable person would accept 89,000 jobs in the national economy as being a significant number. *Id*. The *Milhem* court also stated, "Our circuit's case law does not provide a clear baseline for how many jobs are needed." *Id*. Finally, it observed that its ruling was "in accord with the numbers of national jobs held to be significant by other circuits." *Id*. at 697.

Of consequence here is the fact that the 35,600 jobs nationally in this case is within the range of national job numbers appearing in the circuit court cases cited in *Milhem*. *See id.* (citing a Sixth Circuit case wherein 32,000 national jobs were

14

available, a Ninth Circuit case wherein 25,000 national jobs were available, and two Eighth Circuit cases wherein 10,000 national jobs and 32,000 national jobs were available). Also of note is the fact that since *Milhem*, district courts throughout the Seventh Circuit have found, pursuant to reasoning in that case, that national job numbers comparable to those in this case constituted a significant number. *See, e.g., Sara B. v. Kijakazi*, No. 1:22-cv-52, 2023 WL 2013323, at *4 (N.D. Ind. Feb. 15, 2023) (41,000 jobs in the national economy); *Harry v. Kijakazi*, No. 22-cv-0186, 2022 WL17584174, at *5 (E.D. Wis. Dec. 12, 2022) (29,800 jobs in the national economy); *and Teresa M. v. Kijakazi*, No. 20 C 859, 2022 WL 17406596, at *8 (N.D. Ill. Nov. 22, 2022) (28,000 jobs in the national economy). As in *Milhem* and the foregoing district court cases, the ALJ here "grounded [his] conclusion that the number of jobs mentioned was significant on [his] consideration of [Patrick's] age, education, work experience, and residual functional capacity and that [Patrick] was capable of making a successful adjustment to other work that exists in the economy." *Milhem*, 52 F.4th at 696.

While the *Milhem* court cautioned that moving forward, reviewing courts should be "attentive to the difference between regional and national job numbers" in their discussions as to what constitutes a "significant" number of jobs, it did *not* impose any requirement that there *must* be evidence pertaining to regional job numbers in the record before the ALJ. *Id*. Patrick cites *Liskowitz v. Astrue* in support of his statement that the Seventh Circuit has established a threshold of 1,000 jobs for a claimant's regional numbers. 559 F.3d 736, 743 (7th Cir. 2009). However, the *Liskowitz* court cited that figure immediately following its statement that the claimant did "not argue that 4,000 jobs is insignificant; nor would such an argument be plausible." *Id*. (VE testified to 4,000 jobs in the Milwaukee area). The *Liskowitz* court did not impose any requirement that regional numbers are required for the ALJ to properly reach a conclusion at Step Five as to whether a

15

"significant" number of jobs exist. Patrick cites no Seventh Circuit appellate case and the Court has been unable to locate one that imposed a duty on the ALJ to specifically elicit testimony regarding regional job numbers.[6] Ultimately, the Court does not find that the ALJ committed reversible error in concluding Patrick's ability to perform a total of 35,600 jobs in the entire United States constituted his ability to perform a "significant" number of jobs in the national economy at Step Five.

## IV

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment (Doc. 14) is DENIED and the Defendant's Motion for Summary Affirmance (Doc. 17) is GRANTED. The Clerk of Court is directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, denying benefits to the Plaintiff, Patrick J.W., is AFFIRMED." This matter is now terminated.

*It is so ordered.*

Entered on June 12, 2023.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE

---

[6] On a sidenote, two of the cases *Milhem* cited for national job numbers did not mention regional job numbers. Nor did the *Sara B.*, *Harry*, or *Teresa M.* courts include regional job numbers in their analyses.